HONORABLE RICARDO MARTINEZ

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ARMEN BEEMAN, a single individual,

                       Plaintiff,

    v.

CITY OF SEDRO WOOLLEY,

                    Defendant.

NO.   2:19-cv-00924-RSM

DEFENDANT CITY OF SEDRO-
WOOLLEY'S MOTION FOR
SUMMARY JUDGMENT

Note for Motion Calendar:
December 11, 2020

ORAL ARGUMENT REQUESTED

## I.     RELIEF REQUESTED

Pursuant to Federal Rule of Civil Procedure 56(a), the City of Sedro-Woolley respectfully requests that this Court dismiss Mr. Beeman's claims with prejudice as a matter of law.

## II.     STATEMENT OF MATERIAL FACTS

On April 11, 2016, Officer James Hannawalt was on patrol in his vehicle and observed a vehicle driving the opposite direction with a defective headlight.  (James Hannawalt Decl., Ex. A, p. 1; Complaint, dkt. #5-3, ¶¶ 3.1, ¶¶ 3.5-3.6.)   Officer Hannawalt turned his vehicle around and effectuated a traffic stop.  (Hannawalt Decl., Ex. A, p. 1; Compl., ¶ 3.6.)  When Officer Hannawalt approached, he asked for the driver's license and registration. (Deposition of Armen Beeman, 53:15-

CHRISTIE LAW GROUP, PLLC
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

55:8, attached to Thomas P. Miller Decl. as Ex. A; Compl., ¶ 3.8.)  The driver was identified as Kira Syester, and she informed Officer Hannawalt that there was a firearm in the vehicle.  (Hannawalt Decl., Ex. A, p. 1.)  Ms. Syester had a male passenger in her vehicle, who was identified as Border Patrol Agent Armen Beeman.  (Hannawalt Decl., Ex. A, p. 1; Compl., ¶ 3.1.)  Mr. Beeman handed Ms. Syester his badge, and she handed it to Officer Hannawalt.  (Miller Decl., Ex. A at 54:5-55:8.)  Ms. Syester informed him that the firearm in the car was Mr. Beeman's government-issued weapon.  (*Id*., 56:24-57:20.)  Mr. Beeman admits the traffic stop was lawful.  (*Id.*, 51:20-52:1)

While speaking with Ms. Syester, Officer Hannawalt noticed the strong odor of alcohol coming from inside of the vehicle.  (Hannawalt Decl., Ex. A, p. 1.)  He also noticed that Mr. Beeman was visibly intoxicated.  (*Id*.)  Mr. Beeman's face was flush, and he fumbled with his keys while trying to retrieve the vehicle's registration from the locked glove compartment.  (*Id*.)  Mr. Beeman admits he consumed four or five beers that evening.  (Miller Decl., Ex. A at 43:20-44:20.)  Mr. Beeman had decided he should not drive due to the risk of getting arrested for DUI.  (*Id*.,45:9-46:24.)  Ms. Syester appeared intoxicated as well, and admitted to having recently finished a beer.  (Hannawalt Decl., Ex. A, p. 1; Compl. at ¶ 3.3.)  Officer Hannawalt asked her to exit the vehicle so he could speak with her at the back of the car.  (Hannawalt Decl., Ex. A, p. 1.)  She followed him while Mr. Beeman remained in the vehicle.  (*Id*.)  Officer Hannawalt explained to Ms. Syester that he asked her to exit the vehicle so he could remove her from the strong odor of alcohol in the car.  (*Id*.)  Officer Hannawalt asked Ms. Syester about the events that led up to her being pulled over for the defective headlight.  (*Id*.)  As Ms. Syester began to explain what she had been doing that night, Mr. Beeman exited the car and began yelling at Officer Hannawalt and Ms. Syester.  (*Id*.; Compl., ¶ 3.10.)   Mr. Beeman

described himself as annoyed.  (Miller Decl., Ex. A at 59:11-61:7.)  Officer Hannawalt ordered him to get back in the vehicle, and plaintiff claims to have immediately complied.  (Hannawalt Decl., Ex. A, p. 1.; Compl., ¶ 3.11.)

Around this time, Officer Zachary Carroll arrived at the scene.  (Hannawalt Decl., Ex. A, p. 1; Compl. at ¶ 3.13.)  He witnessed Mr. Beeman exit his car a second time and attempt to speak with Officer Hannawalt.  (Zachary Carroll Decl., Ex. A., p. 1, filed herewith; Compl., ¶ 3.13.)  Officer Hannawalt had to stop asking Ms. Syester questions because of Mr. Beeman's yelling.  (Hannawalt Decl., Ex. A, p. 1.)  Officer Carroll attempted to draw Mr. Beeman's attention away from Officer Hannawalt, but he could not.  (Carroll Decl., Ex. A, p. 1.)

Officer Hannawalt explained the situation to Officer Carroll, and requested that he handcuff Mr. Beeman and place him in Officer Hannawalt's patrol car.[1]  (Hannawalt Decl., Ex. A, p. 2.)  Officer Hannawalt then informed Mr. Beeman that he was being detained, and Officer Carroll handcuffed him and placed him in the patrol car.  (*Id*.)  Officer Carroll could smell the heavy odor of intoxicants coming from Mr. Beeman's person, and Officer Carroll told Mr. Beeman that he was being detained for obstructing a police officer.  (Carroll Decl., Ex. A, p. 1; Miller Decl., Ex. A at 64:2-65:2.)  Mr. Beeman admits that, even while he was handcuffed in the back of the police car, he still attempted to speak with the officers.  (Compl. at ¶ 3.14.)[2]

---

[1] Officer Carroll's report explains that he had warned Mr. Beeman that, if he did not stop, he would be detained.  (Carroll Decl., Ex. A, p. 1.)  Mr. Beeman became much louder and more agitated.  (Hannawalt Decl., Ex. A, p. 1.)  Mr. Beeman stated multiple times that what Officer Hannawalt was doing was illegal.  (*Id*. at 2.)  The aggressive outbursts and sudden exits from the vehicle by Mr. Beeman made Officer Hannawalt uncomfortable.  (*Id*. at 1-2.)  Officer Hannawalt also noted that he was still very aware that there was a firearm in the vehicle.  (*Id*. at 2.)

[2] Officer Carroll's report notes that Mr. Beeman continued to shout profanities and yell that the only reason for the stop was the defective headlight and that the investigation was violating Ms. Syester's rights.  (Carroll Decl., Ex. A, p. 1.)  Because Mr. Beeman could not be calmed down, Officer Carroll closed the patrol car door.  (*Id*.)

CHRISTIE LAW GROUP, PLLC
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

1    Officer Hannawalt was then able to turn his focus to Ms. Syester and asked if she would

2    volunteer for field sobriety tests (FSTs), which she did.  (Hannawalt Decl., Ex. A, p. 2; to Carroll

3    Decl., Ex. A, p. 1.)  During these FSTs, Officer Carroll turned on his body worn camera and began

4    filming.  (Hannawalt Decl., Ex. A, p. 1; Carroll Decl, Ex. B.)  The majority of the following facts

5    were captured on the video and cannot be disputed.  Ms. Syester performed the FSTs with varying

6    success.  (Hannawalt Decl., Ex. A, p. 2; Carroll Decl., Ex. B at 01:17-5:11.)  During this time, Mr.

7    Beeman demanded to speak with a supervisor.  (Carroll Decl., Ex. A, p. 2; Compl., ¶ 3.19.)  Ms.

8    Syester submitted to a portable breath test (PBT).  (Hannawalt Decl., Ex. A, p. 2; Carroll Decl., Ex.

9    A, p. 2, Ex. B at 06:23.)  After a series of failed attempts to blow into the PBT, Ms. Syester was finally

10   successful, and had a BAC level of .14.[3]  (Hannawalt Decl., Ex. A, p. 2; Carroll Decl., Ex. A, p. 2,

11   Ex. B at 13:17; Compl. at ¶ 3.16.)  Ms. Syester was eventually arrested and placed in the back of

12   Officer Carroll's patrol car.  (Hannawalt Decl., Ex. A, p. 2; Carroll Decl., Ex. A, p. 2, Ex. B at 15:54.)

13   Contrary to Mr. Beeman's assertions in his Complaint that he was calm while the FSTs were

14   taking place, Officer Carroll's body worn video ("BWV") shows Mr. Beeman was yelling from

15   Officer Carroll's patrol car.[4]  (Compl., ¶ 3.14, ¶ 3.17, ¶ 3.19; Carroll Decl., Ex. B at 5:11; Dep. of

16   Beeman, 47:14-22.)  Mr. Beeman is heard on the body worn video aggressively yelling at the officers:

17   "that's entrapment!"  (Carroll Decl., Ex. B at 05:19-26.)  During this time, Officer Carroll

---

[3] Mr. Beeman alleges that the Sedro-Woolley officers performed the PBT inappropriately. (Compl., ¶ 3.16; Miller Decl., Ex A at 71:2-74:2.)  Mr. Beeman has no training or expertise in administering PBT, and Ms. Syester never challenged the PBT results in her DUI case.  (*Id.*, 73:12-74:2; 74:15-75:1.)

[4] "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007).

DEFENDANT CITY OF SEDRO-
WOOLLEY'S MOTION FOR SUMMARY
JUDGMENT (2:19-cv-00924-RSM) - 4

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

1  unsuccessfully attempted to calm Mr. Beeman down. (*Id*.; Carroll Decl., Ex. A, p. 1.) Officer Carroll

2  then walked back to Ms. Syester, who apologized for Mr. Beeman's behavior. (Carroll Decl., Ex. B

3  at 5:32-58 and 8:02.) He then said to Ms. Syester, "you understand that when people get angry and

4  get out of their vehicles during traffic stops, it makes us nervous?" (*Id*. at 08:14.)

5  A few minutes later, Mr. Beeman again began yelling at the officers, and Ms. Syester yelled

6  back at him to stop. (Carroll Decl., Ex. B at 11:14.) He then yelled at the officers: "Where's your

7  fucking supervisor? Get him out here." (*Id*. at 11:18-30.) All throughout Ms. Syester's FSTs, Mr.

8  Beeman was yelling at the officers and repeating profanities. (*Id*. at 11:04-54.) Ms. Syester was

9  agitated by Mr. Beeman's yelling, and the two began to yell at one another. (*Id*. at 11:56.) She told

10  him to shut his mouth and "you are going to jail." (*Id*. at 12:01.) He continued to yell for some time

11  after that. (*Id*.) Officer Carroll called for Officer Kerig Holmberg to come to the scene, as Officer

12  Holmberg was a lead officer. (Carrol Decl., Ex. A, p. 2; Carroll Decl., Ex. B at 12:18 and 14:49.)

13  During this time, Mr. Beeman was clearly upset and yelling profanities. (*Id*.)

14  Officer Holmberg arrived at the scene, and Officers Carroll and Hannawalt explained the

15  situation to him. (Holmberg Decl., Ex. A, p. 1; Carroll Decl., Ex. B at 16:27-18:16.) Officer

16  Holmberg then spoke with Mr. Beeman. (Holmberg Decl., Ex. A, p. 1; Carroll Decl. Ex. B at 18:45.)

17  Mr. Beeman claimed Officers Carroll and Hannawalt violated several laws, including Ms. Syester's

18  rights, all because of a headlight violation. (Holmberg Decl., Ex. A, p. 1.) Mr. Beeman slurred his

19  words and occasionally raised his voice at the officers. (Carroll Decl., Ex. B at 18:54-24:24.) Officer

20  Holmberg asked Mr. Beeman what laws had been violated, and Mr. Beeman said he believed his

21  detainment was illegal. (Holmberg Decl., Ex. A, p. 1.) Officer Holmberg reminded Mr. Beeman that

22

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

1  he was being detained because he got out of his car multiple times during a traffic stop. (*Id.*; Carroll

2  Decl., Ex. B at 19:06.) Mr. Beeman admitted that he told the officers to "knock it off" because it was

3  just a headlight violation and because they had no right to detain Ms. Syester over a broken headlight.

4  (Carroll Decl., Ex. B at 22:04.) Mr. Beeman continued to disagree with the officers and called their

5  conduct "bullshit." (*Id.* at 22:49-52.) Mr. Beeman admits he acted the way he did in order for Officer

6  Hannawalt to stop his investigation into Ms. Syester. (Miller Decl., Ex. A at 68:5-13; 94:16-95:5.)

7      Officer Holmberg did not want to release Mr. Beeman's service weapon to him because of

8  his agitated state, and he felt that Mr. Beeman's supervisor should be contacted about the handgun.

9  (Holmberg Decl., ¶ 3.)  Officer Holmberg advised Officer Hannawalt that he would call Mr.

10  Beeman's Border Patrol supervisor so that the someone in Mr. Beeman's office could secure the

11  pistol. (*Id.*, Ex. A, p. 2.) After speaking with Border Patrol agents, an agent later arrived at Sedro-

12  Woolley Police Department and collected Mr. Beeman's duty pistol and badge. (*Id.*, p. 3.)

13      Mr. Beeman was arrested and charged for obstructing a public official in Skagit County.

14  (Hannawalt Decl., Ex. A, pp. 2-3; Miller Decl., Ex. B, filed herewith.) On April 14, 2016, pursuant

15  to CrRLJ 3.2.1, the presiding judge determined that there was probable cause to believe that Mr.

16  Beeman had committed the crime and would therefore be held to answer the misdemeanor count.

17  (Patrick Hayden Decl., Ex. A, filed herewith.) Skagit County Assistant Prosecuting Attorney Patrick

18  Hayden determined that there was probable cause to charge Mr. Beeman with obstructing a public

19  official. (*Id.*, ¶ 3.) Mr. Hayden's decision was based on the footage captured in the BWV. (*Id.*, ¶ 4.)

20      On October 28, 2016, the jury acquitted Mr. Beeman. (Miller Decl., Ex. C.) On November

21  22, 2016, the chief of the Sedro-Wooley Police Department, William Tucker, wrote a letter to CBP

22

regarding Mr. Beeman's conduct on April 11, 2016.  (William Tucker Decl., Ex. A.)  In that letter, Chief Tucker explained his dismay at Mr. Beeman's conduct, and requested that if CBP had cause to send Mr. Beeman to Sedro-Wooley in his official capacity, that they send a supervisor with him.[5] (*Id.*, ¶ 4.)  He sent the letter because he feared Mr. Beeman may engage in further inappropriate behavior at the station.  (*Id.*, ¶ 2.)  CBP investigated Mr. Beeman and determined that he engaged in conduct unbecoming of any officer and failed to be forthcoming in the investigation.[6]  (Miller Decl., Ex. A at 10:15-32:6; and Ex. D, Notice letter.)  Because he had prior discipline, CBP determined Mr. Beeman's employment should be terminated.  (Miller Decl., Ex. D.)  Mr. Beeman appealed that decision, and he prevailed.  (Miller Decl, Ex. A at 13:6-16:20.)  However, he then committed another infraction, violating the terms of his "last chance agreement," and the CBP terminated him on December 19, 2017, for that incident. (*Id.*, 15:16-16:20.)  On August 21, 2019, Mr. Beeman submitted a declaration to CBP challenging his termination and claimed that CBP terminated because of his sexual orientation.  (Miller Decl, Ex. E, Declaration of Beeman.)  Chief Tucker did not intend that Mr. Beeman lose his job due to this letter; nor was he aware that Mr. Beeman lost his job until some point during this litigation.  (Tucker Decl., ¶ 3.)

Mr. Beeman filed a tort claim in Skagit County on April 11, 2019, filed suit in Skagit County on June 11, 2019, and defendant removed the case to this Court on June 14, 2019.  (Miller Decl., Ex. F, Tort Claim; Compl., dkt. #5-3; Notice of Removal, dkt. #1.)  The City is the sole defendant.

/ /

---

[5] This communication to CBP by the Chief pertained to a matter of reasonable concern to CBP, regardless of intent or motive, and is therefore not actionable and the City is immune from civil liability.  RCW 4.24.510.

[6] Mr. Beeman reported his arrest to his supervisor the morning after it occurred.  (Miller Decl., Ex A at 24:4-18.)

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

### III.   ISSUES PRESENTED

(1) Should the Court dismiss Mr. Beeman's false arrest claim, because it is time barred? **Yes.**

(2) Should the Court dismiss all § 1983 claims, because the officers did not violate any of Mr. Beeman's constitutional rights? **Yes.**

(3) Should this Court dismiss Mr. Beeman's *Monell* claims, because there is no evidence to support them? **Yes.**

(4) Should the Court dismiss Mr. Beeman's negligent infliction of emotional distress claim because it is predicated on his arrest and prosecution that were supported by probable cause? **Yes.**

(5) Should the Court dismiss Mr. Beeman's negligent supervision, training, and retention claims because each of the officers were acting within the scope of their employment? **Yes.**

### IV.   EVIDENCE RELIED UPON

Defendant relies upon the pleadings already filed in the record, and the Declarations of James Hannawalt, Zachary Carroll, Kerig Holmberg, Patrick Hayden, William Tucker, and Thomas P. Miller, filed herewith.

### V.   ARGUMENT AND AUTHORITIES

**A.   Summary Judgment Standard**

Summary judgment is proper where "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). In assessing whether a party has

DEFENDANT CITY OF SEDRO-
WOOLLEY'S MOTION FOR SUMMARY
JUDGMENT (2:19-cv-00924-RSM) - 8

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

1   met its burden, the underlying evidence must be viewed in the light most favorable to the nonmoving

2   party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986).

3        Mr. Beeman alleges the City violated his Fourteenth Amendment[7] right to due process and is

4   therefore liable under 42 U.S.C. § 1983 for false arrest and malicious prosecution. (Compl., ¶ 4.4.)

5   In order to sustain a cause of action under § 1983, a plaintiff must show (1) that he suffered a

6   violation of his rights protected by the Constitution or created by federal statute, and (2) that the

7   violation was proximately caused by a person acting under color of state law. *Crumpton v. Gates*,

8   947 F.2d 1418, 1420 (9th Cir. 1991). Vicarious liability is inapplicable to § 1983 lawsuits, so

9   plaintiffs must plead that each government-official defendant, through the official's own individual

10   actions, violated the constitution. *Ashcroft v. Iqbal*, 556 U.S., 662, 676 (2009). A municipality cannot

11   be held liable under 42 U.S.C. § 1983 on a theory of *respondeat superior*, or vicarious liability.

12   *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 692, 98 S. Ct. 2018 (1978). Moreover, absent a

13   constitutional violation, there can be no municipal liability under 42 U.S.C. § 1983. *Id.*; *Quintanilla*

14   *v. City of Downey*, 84 F.3d 353, 355 (9th Cir. 1996).

15   **B.**    **Plaintiff's Fourth Amendment False Arrest Claim Is Time Barred.**

16        Mr. Beeman claims the City violated his right to be free from false arrest. This claim fails

17   because it is barred by the applicable statute of limitations. For 42 U.S.C. § 1983 claims, federal

18   courts apply the statute of limitations of the state in which the claim arises. *Donoghue v. Orange*

19

---

20   [7]Mr. Beeman's Fourteenth Amendment claim based on his alleged false arrest is actually governed by the Fourth Amendment. An "arrest without probable cause violates the fourth amendment and gives rise to a claim for damages

21   under § 1983." *Borunda v. Richmond*, 885 F.2d 1384, 1391 (9th Cir. 1988); s*ee also Albright v. Oliver*, 510 U.S. 266, 273, 114 S. Ct. 807 (1994) (Generally, "[w]here a particular Amendment 'provides an explicit textual source of

22   constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'") (internal citations omitted).

DEFENDANT CITY OF SEDRO-
WOOLLEY'S MOTION FOR SUMMARY
JUDGMENT (2:19-cv-00924-RSM) - 9

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

1   *County*, 848 F.2d 926, 929 (9th Cir. 1987).  In doing so, the Ninth Circuit treats claims under § 1983

2   as personal injury actions.  *McDougal v. County of Imperial*, 942 F.2d 668, 673-74 (9th Cir. 1991).

3   The statute of limitations in Washington for taking, detaining, or injuring personal property or injuring

4   the person or rights of another is three years.  *Rochester v. Tulp*, 54 Wn.2d 71, 337 P.2d 1062 (1959);

5   RCW 4.16.080(2).  While state law establishes the statute of limitations applicable to § 1983 claims,

6   "the determination of the point at which the limitations period begins to run is governed solely by

7   federal law."  *Hoesterey v. Cathedral City*, 945 F.2d 317, 319 (9th Cir. 1991).  "Under federal law,

8   the touchstone for determining the commencement of the limitations period is notice: 'a cause of

9   action generally accrues when a plaintiff knows or has reason to know of the injury which is the basis

10  of his action.'"  *Id*. (*citing Cline v. Brusett*, 661 F.2d 108, 110 (9th Cir. 1981)).

11          In Washington, a claimant must present a tort claim to the municipality it intends to sue.  RCW

12  4.96.020.  That statute states that no action on any tort claim against a local governmental entity shall

13  be commenced until 60 days have elapsed after the claim was first presented to its governing body.

14  RCW 4.96.020(4).  The applicable period of limitations within which this action must be commenced

15  is tolled during this 60-day period.  *Id*.  However, the Washington State Supreme Court has held that

16  the claim filing requirement of RCW 4.96.020 does not apply to § 1983 actions.  *Wright v. Terrell*,

17  162 Wn.2d 192, 196, 170 P.3d 570 (2007) (citing to *Felder v. Casey*, 487 U.S. at 138, 108 S.Ct. 2302).

18          Further, the Ninth Circuit has held that RCW 4.92.020(4) specifically is inapplicable to § 1983

19  actions.  *Boston v. Kitsap Cty*., 852 F.3d 1186, 1185 (9th Cir. 2017).  In *Boston*, the court held that

20  RCW 4.96.020(4) is not a true tolling provision, but instead is a "special statute of limitation," and "it

21  does not operate to toll the state's general residual limitations period applicable to § 1983 actions."

22

*Id*. at 1189.  Mr. Beeman filed his tort claim exactly 3 years after his arrest, on April 11, 2019.  He then filed suit on June 11, 2019 – three years and 60 days after his arrest.  Therefore, because RCW 4.96.020 does not toll a § 1983 claim, any claim arising from his arrest is barred by the statute of limitations.  Accordingly, the Court should dismiss plaintiff's false arrest claim with prejudice.

**C.      Plaintiff's False Arrest and Malicious Prosecution Claims Fail on the Merits.**

Mr. Beeman's false arrest and malicious prosecution claim should also be dismissed on their merits.  Mr. Beeman alleges that the "City of Sedro Woolley while acting under the color of state law engaged in a policy of knowingly permitting an illegal arrest and criminal prosecution to occur."  His Complaint focuses on the Officers' conduct surrounding Ms. Syester's arrest and his arrest.  These claims fail because Mr. Beeman's arrest and prosecution were supported by probable cause.

To prove a claim of false arrest, a plaintiff must show he was arrested without lawful authority, or without probable cause.  *Michigan v. Summers*, 452 U.S. 692, 700 (1981); *Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998); *Hanson v. City of Snohomish*, 121 Wn.2d 552, 556 (1993).  Probable cause exists when the totality of the circumstances within an officer's knowledge would cause a reasonably prudent person to believe that a crime has been, or is currently, being committed.  *Lassiter v. City of Bremerton*, 556 F.3d 1049, 1053 (9th Cir. 2009).  Probable cause is a complete defense to an action for false arrest.  *Lacy v. Cnty. of Maricopa*, 631 F. Supp.2d 1183, 1193 (D. Ariz. 2008) (internal citations omitted); *see Smith v. Almada*, 640 F.3d 931, 944 (9th Cir.2011) (Gwin, J., concurring) (explaining probable cause acts as an absolute defense to both false arrest and malicious prosecution claims); *Hanson*, 121 Wn.2d at 563.

A malicious prosecution claim is generally not cognizable under 42 U.S.C. § 1983 if

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

1  process is available within the state judicial system to provide a remedy.  *Usher v. City of Los*

2  *Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  However, "an exception exists to the general rule

3  when a malicious prosecution is conducted with the intent to deprive a person of equal protection

4  of the laws or is otherwise intended to subject a person to a denial of constitutional rights."  *Cline*

5  *v. Brusett*, 661 F.2d 108, 112 (9th Cir. 1981).  Thus, in order to prevail on a § 1983 malicious

6  prosecution claim, a plaintiff "must demonstrate not only a deprivation of a constitutionally

7  protected right, but also all of the elements for malicious prosecution under state law."  *Haupt v.*

8  *Dillard*, 17 F.3d 285, 289 (9th Cir. 1994).

9         In order to maintain an action for malicious prosecution, a plaintiff must plead and establish

10  five essential elements: (1) that the prosecution claimed to have been malicious was instituted or

11  continued by the defendant; (2) that there was want of probable cause for the institution or

12  continuation of the prosecution; (3) that the proceedings were instituted or continued through

13  malice; (4) that the proceedings terminated on the merits in favor of the plaintiff, or were

14  abandoned; and (5) that the plaintiff suffered injury or damage as a result of the prosecution.

15  *Hanson*, 121 Wn.2d at 558.  "Although all elements must be proved, malice and want of probable

16  cause constitute the gist of a malicious prosecution action."  *Id*.  Probable cause to initiate criminal

17  proceedings is a complete defense to a claim of false arrest or malicious prosecution.  *Id*.; *Peasley*

18  *v. Puget Sound Tug & Barge*, 13 Wn.2d 485, 499, 125 P.2d 681 (1942); *Wood v. Kesler* 323 F.3d

19  872, 878-81 (11th Cir. 2003).

20         Mr. Beeman was arrested and charged with SWMC 9.10.010.  That statute states that "[e]very

21  person who shall knowingly hinder, delay or obstruct any public officer in the discharge of his official

22  powers or duties, shall be guilty of obstructing a public officer."  Here, Mr. Beeman admits in his

Complaint that he was directed by Officer Hannawalt to get back into the car, after getting out.  Mr. Beeman also admits that he then exited the car a second time.  Mr. Beeman also testified multiple times that he knowingly and intentionally attempted to hinder Officer Hannawalt's investigation. Indeed, the BWV shows Mr. Beeman in the back of a police car, yelling at officers and telling Ms. Syester not to answer their questions, in a clear attempt to hinder or stop officers' questioning of Ms. Syester.  Because the totality of the circumstances would cause a reasonably prudent person to believe that Mr. Beeman was hindering and delaying a police investigation, probable cause existed for Mr. Beeman's arrest and prosecution.  The Court should therefore dismiss Mr. Beeman's false arrest and malicious prosecution claims with prejudice.

**D.    Mr. Beeman Is Also Collaterally Estopped from Bringing His False Arrest and Malicious Prosecution Claims.**

Moreover, a judge already decided that there was probable cause for Mr. Beeman's prosecution, and thus, he is estopped from arguing otherwise.  "State law governs the application of collateral estoppel ... to a state court judgment in a federal civil rights action." *Ayers v. City of Richmond*, 895 F.2d 1267, 1270 (9th Cir. 1990).  Under Washington law, collateral estoppel is appropriate when four factors are present: "(1) the issue decided in the prior adjudication is identical with the issue now before the court, (2) there was a final judgment on the merits, (3) the party against whom the plea is now asserted is a party or is in privity with a party to the prior adjudication, and (4) the application of the collateral estoppel doctrine will not work an injustice against the party against whom the doctrine is applied." *San Telmo Assocs. v. Seattle*, 108 Wn.2d 20, 22-23, 735 P.2d 673 (1987) (citing *Rains v. State*, 100 Wn.2d 660, 665, 674 P.2d 165 (1983)).

All four factors for collateral estoppel are met, and Mr. Beeman cannot relitigate the issue of

probable cause in this lawsuit.  First, the issue sought to be precluded (probable cause) is identical to one that was decided in the preliminary hearing.  The Ninth Circuit has stated that when a magistrate or judicial officer finds probable cause to bind over at a preliminary hearing, this may be sufficient to preclude a party from later arguing that no probable cause existed for an arrest.  *Haupt v. Dillard*, 17 F.3d 285, 289 (9th Cir. 1994); *see also Parker v. City of Santa Ana*, 2010 WL 11601307, at *6 (C.D. Cal., 2010).  In *Haupt*, plaintiff was arrested pursuant to a warrant and was then charged with and acquitted for murder.  *Id*. at 287.  The judge at the preliminary hearing had determined that there was probable cause to hold plaintiff over for trial.  *Id*. at 288.  Like the Plaintiff in *Haupt*, Mr. Beeman cannot point to any evidence that was presented at the preliminary hearing that was not known to the officers at the time that they executed his arrest.  Additionally, the case against Mr. Beeman proceeded all the way through trial – something that would not have occurred had there been no probable cause.  That Mr. Beeman prevailed does not equate to the absence of probable cause.  As in *Haupt*, the judge's determination at the preliminary hearing that there was probable cause is identical to the determination of probable cause for his arrest and prosecution.  *Id*.

Second, now that the criminal case is resolved, the probable cause determination is final.  The issue of probable cause was litigated and decided when the judge held Mr. Beeman over for trial, and Mr. Beeman never sought review of that decision.  *Haupt*, 17 F.3d at 289 ("the probable cause determination was necessary to the judgment; the sole purpose of the preliminary hearing was to determine whether [the Plaintiff] should have been bound over for trial.").  Third, the parties are the same in both proceedings.  Mr. Beeman was the defendant in the prior action and is plaintiff in this one.  The City of Sedro-Woolley prosecuted the criminal case and is the sole defendant here.  Lastly,

application of the doctrine of collateral estoppel will not work an injustice against Mr. Beeman.  Mr. Beeman had a full and fair opportunity to litigate the issue of probable cause in his criminal case.  He could have, and should have, brought a motion to dismiss that case if he felt the prosecution lacked probable cause.  Mr. Beeman is estopped from relitigating the issue of whether his arrest and prosecution were supported by probable cause.

**E.     The Prosecutor's Independent Judgment Breaks the Chain of Causation for the Malicious Prosecution Claim.**

Even if the Court assumes there is an issue of fact as to probable cause, Mr. Beeman's malicious prosecution claim fails for lack of causation.  A prosecutor's independent judgment may break the chain of causation between the unconstitutional actions of other officials and the harm suffered by a constitutional tort plaintiff.[8]  *Beck v. City of Upland*, 527 F.3d 853, 862 (9th Cir. 2008).  "Put in traditional tort terms, the prosecutor's independent decision can be a superseding or intervening cause of a constitutional tort plaintiff's injury, precluding suit against the officials who made an arrest or procured a prosecution."  *Id*.  In the context of a Fourth Amendment false arrest claim, the Ninth Circuit has adopted an evidentiary presumption, "'that the prosecutor filing [a criminal] complaint exercised independent judgment in determining that probable cause for an accused's arrest exist[ed],' thereby breaking the 'chain of causation between an arrest and prosecution' and immunizing 'investigating officers . . . from damages suffered' after the complaint was filed.'"  *Id*. (*quoting Smiddy I*, 665 F.2d at 266-67; *see also Smiddy v. Varney*, 803

---

[8] To the extent Mr. Beeman bases any claims on Mr. Hayden's decision making, those claims fail due to prosecutorial immunity under state and federal law. *Imbler v. Pachtman*, 424 U.S. 409, 430-31, 96 S. Ct. 984 (1976) (prosecutors afforded absolutely immunity for charging decisions);  *Creelman v. Svenning*, 67 Wn.2d 882, 884-85, 410 P.2d 606 (1966) (conveying prosecutor's immunity to his employing city).

DEFENDANT CITY OF SEDRO-
WOOLLEY'S MOTION FOR SUMMARY
JUDGMENT (2:19-cv-00924-RSM) - 15

1   F.2d 1469, 1472 ("*Smiddy II*") (9th Cir. 1986)).

2      That presumption, however, is rebuttable by evidence that the investigating officers made

3   material omissions or gave false information to the prosecutor.   *Borunda v. Richmond*, 885 F.2d

4   1384, 1390 (9th Cir. Cal. 1988) (*citing Smiddy*, 665 F.2d at 266-67; *see also*, *Beck*, 527 F.3d at

5   862. Significantly, a plaintiff must present information in addition to his own account that

6   contradicts the police report to avail himself of this showing.  *See Newman v. County of Orange*,

7   457 F.3d 991, 994-95 (9th Cir. 2006).   Here, there is no such evidence, and the prosecutor's

8   independent decision to pursue charges breaks the chain of causation.

9   **F.**    **There Was No Actionable Conspiracy to Commit Violation of Civil Rights under 42 U.S.C. § 1985(3)**

10

11      Mr. Beeman also brings a conspiracy claim under 42 U.S.C. § 1985, alleging that the City,

12   together with its employees and agents, "engaged in a conspiracy for the purpose of depriving the

13   Plaintiff of his constitutional right to pursue an occupation."  Compl., dkt. #5-3, ¶5.2.  Mr. Beeman

14   bases this claim on the Chief's letter and an alleged comment by the prosecutor about the result of

15   the criminal trial.   (Miller Decl., Ex. A at 25:1-27:19.)   This claim cannot withstand summary

16   judgment.

17      The intra-enterprise conspiracy doctrine is drawn from § 1 of the Sherman Act.  *Tavoloni v.*

18   *Mount Sinai Med. Ctr.*, 984 F. Supp. 196, 205 (S.D.N.Y. 1997).  In substance, it holds that the defining

19   element of a conspiracy— a plurality of actors committed to a common goal – is not satisfied by joint

20   action of wholly owned subsidiaries of a single entity, unincorporated divisions of a company, or

21   employees of a single entity acting within the scope of their employment.   *Id.* (*citing Copperweld*

22   *Corp. v. Independence Tube Corp.*, 467 U.S. 752, 104 S. Ct. 2731 (1984)).  This principle applies to

DEFENDANT CITY OF SEDRO-
WOOLLEY'S MOTION FOR SUMMARY
JUDGMENT (2:19-cv-00924-RSM) - 16

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

1    bar § 1985 suits against municipalities and their employees.  *Moran v. City of New Rochelle*, 346 F.

2    Supp. 2d 507, 519 (S.D.N.Y. 2004).

3           Mr. Beeman alleges that police officers working for the same city (Sedro-Woolley) conspired

4    together to falsely arrest and prosecute him.  Because employees working for the same entity cannot,

5    as a matter of law, conspire, the Court should dismiss this § 1985(3) conspiracy claim with prejudice.

6    Moreover, to bring a cause of action successfully under § 1985(3), a plaintiff must allege and prove

7    four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any

8    person or class of persons of the equal protection of the laws, or of equal privileges and immunities

9    under the laws; and (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured

10   in his person or property or deprived of any right or privilege of a citizen of the United States.  *Sever*

11   *v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992) (*citing United Brotherhood of Carpenters*

12   *and Joiners of America v. Scott*, 463 U.S. 825, 828-29, 103 S. Ct. 3352 (1983)).  The second element

13   requires that, in addition to identifying a legally protected right, a plaintiff must demonstrate a

14   deprivation of that right motivated by "some racial, or perhaps otherwise class-based, invidiously

15   discriminatory animus behind the conspirators' action." *Sever*, 978 F.2d at 1536 *quoting Griffith v.*

16   *Breckenridge*, 403 U.S. 88, 102, 91 S. Ct. 1790 (1971).  There is no evidence of any class-based

17   discriminatory animus that was the driving force behind the officers' or the City's actions in this case,

18   this claim fails as a matter of law.  Lastly, neither the City, nor any of its employees, had any power

19   over Mr. Beeman's employment.  The authority to fire Mr. Beeman rested solely with CBP, and that

20   agency did so due to other disciplinary issues.  The City did not proximately cause his termination.

21   **G.      Plaintiff's Fourteenth Amendment Substantive Due Process Claim Fails.**

22

Mr. Beeman also appears to argue that the City engaged in unlawful action that led to his termination. As set forth above, the City was not Mr. Beeman's employer and did not violate his right to continued public employment.[9] The Fourteenth Amendment protects the individual against "arbitrary action of government." *County of Sacramento v. Lewis*, 523 U.S. 833, 845, 118 S. Ct. 1708 (1998). Only the most egregious official conduct can be said to be "arbitrary in the constitutional sense." *Id*. at 846. No such conduct occurred here, as the City merely prosecuted Mr. Beeman for obstructing. In order for conduct to be sufficiently arbitrary and egregious to sustain a Fourteenth Amendment claim, it must "shock the conscience." *Lewis*, 523 U.S. at 846.

Here, the City was not Mr. Beeman's employer and, even assuming arguendo that the Chief's letter or the prosecutor's statements to his superiors adversely impacted his employment, Mr. Beeman's subsequent disciplinary infraction of stealing gas proximately caused his termination. His employer, CBP, made that decision free of any input or contact from the City, and there is no evidence that they would not have fired him for stealing – an objectively serious offense – if his April 11, 2016 arrest had not happened. Further, in a sworn declaration, Mr. Beeman expressly attributed his termination to alleged sexual orientation discrimination, not his arrest. No one from the City took any action against Mr. Beeman that caused him to lose his job or that shocks the conscience.

**H.    There is No Evidence to Support *Monell* Liability.**

Because the Sedro-Woolley police officers did not violate Mr. Beeman's constitutional rights, his claims against the City should be dismissed for this reason alone. Further, the claims should be

_____

[9] Mr. Beeman has no claim for a procedural due process claim, which requires proof of: "(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Hufford v. McEnaney*, 249 F.3d 1142, 1150 (9th Cir. 2001). The City had no control over Mr. Beeman's employment. He also received due process and his job was reinstated.

WOOLLEY'S MOTION FOR SUMMARY
JUDGMENT (2:19-cv-00924-RSM) - 18

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

1   dismissed because any alleged constitutional violation was not caused by an existing unconstitutional

2   municipal policy attributable to the City of Sedro-Woolley.

3          A municipality cannot be held liable under 42 U.S.C. § 1983 solely because it employs a

4   tortfeasor. *Monell*, 436 U.S. at 692. Instead, a plaintiff seeking to establish municipal liability must

5   demonstrate that the municipality had a deliberate policy, custom, or practice that was the moving

6   force behind the constitutional violation suffered. *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1096

7   (9th Cir. 2013). To do so, a plaintiff must establish that the alleged unconstitutional action was either

8   the result of an unconstitutional custom or policy; the result of a deliberate indifference to a known

9   need to train; or ratified by the City's chief policymaker. *Hopper v. City of Pasco*, 241 F.3d 1067,

10   1083 (9th Cir. 2001). "Pointing to a municipal policy action or inaction as a but-for cause is not

11   enough to prove a causal connection under *Monell*." *Van Ort v. Estate of Stanewick*, 92 F.3d 831,

12   837 (9th Cir. 1996) (internal citations and quotations omitted). The policy must be the proximate

13   cause of the § 1983 injury. *Id*.

14          To impose municipal liability under § 1983 based solely on a single incident, a plaintiff

15   must demonstrate that the incident "was caused by an existing unconstitutional municipal policy

16   which policy can be attributed to a municipal policymaker." *Oklahoma City v. Tuttle*, 471 U.S.

17   808, 824, 105 S. Ct. 2427 (1985). An unconstitutional policy need not be formal or written to

18   create municipal liability under § 1983; however, it must be so permanent and well settled as to

19   constitute a custom or usage with the force of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144,

20   167-68, 90 S. Ct. 1598 (1970). Here, there is simply no evidence to support this theory. That is

21   no custom or policy of false arrest, malicious prosecution, or conspiracy to terminate employment

22

DEFENDANT CITY OF SEDRO-
WOOLLEY'S MOTION FOR SUMMARY
JUDGMENT (2:19-cv-00924-RSM) - 19

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

at another agency.

To the extent Mr. Beeman claims he suffered a constitutional injury due to the City's deliberate indifference to a known need to train its officers, that claim also lacks any evidentiary support. "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id.* at 1360 (*citing Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 409 (1997). There is no evidence of any training deficiencies, much less a deliberate indifference to a known need to train.

Lastly, there is no evidence the City's chief policymaker ratified any unconstitutional decision to prosecute Mr. Beeman such that § 1983 municipal liability may attach. To prove municipal liability under this theory, Mr. Beeman must show that, "an official with final policy-making authority ratified a subordinate's unconstitutional action or decision and the basis for it." *Hopper*, 241 F.3d at 1083. "[R]atification requires, among other things, knowledge of the alleged constitutional violation." *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999). Merely affirming a finding that an officer's actions were "within policy" does not constitute ratification. *See Dunklin v. Mallinger*, 2013 WL 1501446, *2 (N.D. Cal. 2013).

> The law does not say that, whenever an investigative group accepts an officer's version over a victim's differing version, this acceptance establishes a policy for which a municipality may be held liable under § 1983. If that were the law, counties might as well never conduct internal investigations and might as well always admit liability. But that is not the law. The law clearly requires "something more."

1  *Kanae v. Hodson*, 294 F.Supp.2d 1179, 1188 (D. Hawaii 2003); *German v. Roberts*, 2017 WL

2  6547472, at *4 (W.D. Wash. December 22, 2017).   As with the other two theories, there is no

3  evidence to support a claim that the chief policymaker ratified an unconstitutional act.   Thus, the

4  Court should dismiss all Monell 42 U.S.C. § 1983 claims with prejudice as a matter of law.

5  **I.      Plaintiff's Negligent Infliction of Emotional Distress Claim Fails.**

6         Mr. Beeman next claims the City caused him to suffer from emotional distress "by placing

7  him unlawfully under arrest and pursuing unlawful prosecution."   However, one cannot recover for

8  negligent infliction of emotional distress stemming from an arrest and prosecution that is supported

9  by probable cause.  *Orin v. Barclay*, 272 F.3d 1207, 1219 (9th Cir. 2001); *McBride v. Walla Walla

10  Cty.*, 95 Wn. App. 33, 38-40, 975 P.2d 1029 (1999); *Hawley v. City of Snoqualmie*, 2015 WL

11  5918381, at *4 (W.D. Wash. 2015).

12         Also, in order to establish negligent infliction of emotional distress, Mr. Beeman must

13  prove his emotional distress is manifested by objective symptomatology, *i.e.*, physical symptoms

14  evidencing and resulting from the emotional distress.  *Hunsley v. Giard*, 87 Wn.2d 424, 436, 553

15  P.2d 1096 (1976).   The "emotional distress must be susceptible to medical diagnosis and proved

16  through medical evidence." *Kloepfel v. Bokor*, 149 Wn.2d 192, 196-97, 66 P.3d 630, 633 (2003)

17  (citing *Hegel v. McMahon,* 136 Wn.2d 122, 135, 960 P.2d 424 (1998). There is no such evidence.

18         This claim is also barred by the public duty doctrine.   To establish negligence, a plaintiff must

19  prove: (1) the existence of a duty; (2) breach of that duty; (3) resulting injury; and (4) proximate cause.

20  *Musci v. Graoch Assocs. P'ship #12*, 144 Wn.2d 847, 854, 31 P.3d 684 (2001).   "Under the public

21  duty doctrine, there is no liability for a public official's negligent conduct unless it is shown that the

22

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

duty breached was owed to the injured person as an individual and not merely the breach of an obligation owed to the public in general (*i.e.*, a duty to all is a duty to no one)." *Torres v. City of Anacortes*, 97 Wn. App. 64, 73, 981 P.2d 891 (1999).

There are four exceptions to the public duty doctrine are (1) the special relationship exception, (2) the failure to enforce exception, (3) the legislative intent exception, and (4) the rescue doctrine. *Bailey v. Town of Forks*, 108 Wn.2d 262, 268, 737 P.2d 1257 (1987). The first exception to the public duty doctrine is the only potentially applicable exception, and it arises under Washington law where some contact or a "special relationship" can be found between the public official defendant and the injured party plaintiff. *Chambers-Castanes v. King County*, 100 Wn.2d 275, 286, 669 P.2d 451, 458 (1983) (actionable duty will arise if (1) some form of privity exists between police and victim that sets victim apart from general public and (2) explicit assurances of protection give rise to victim's reliance). In this case, there is no allegation, nor any evidence, that any officer gave any explicit assurance to Mr. Beeman.

Independent of these four exceptions, Washington also recognizes that law enforcement officers owe a "duty to refrain from directly causing harm to another through affirmative acts of misfeasance." *Beltran-Serrano v. City of Tacoma*, 193 Wn.2d 537, 550, 442 P.3d 608 (2019). However, plaintiff alleged only intentional conduct in this lawsuit – he has not alleged that any action on the part of any Sedro-Woolley police officer was negligent or that they failed to exercise reasonable care to avoid causing him harm when they lawfully arrested him based on probable cause. There is no legal basis to support a negligent infliction of emotional distress claim in this case, and the Court should therefore dismiss it as a matter of law.

DEFENDANT CITY OF SEDRO-
WOOLLEY'S MOTION FOR SUMMARY
JUDGMENT (2:19-cv-00924-RSM) - 22

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

1  **J.      Plaintiff's Negligent Training, Retention, and Supervision Claims Fail.**

2         Mr. Beeman also alleges that the City "engaged in negligent retention and supervision of

3  Officer Holmberg and Hannawalt by failing to oversee the legally proper training of these

4  officers."  In Washington, an employer may be vicariously liable for the actions of its employees.

5  *Niece v. Elmview Group Home*, 131 Wn.2d 39, 48, 929 P.2d 420 (1997).  However, failure to train,

6  retain, and supervise claims are barred by the public duty doctrine.  *See Osborn v. Mason County*,

7  157 Wn.2d 18, 27, 134 P.3d 197 (2006); *Babcock v. Mason County Fire Dist. No. 6.*, 144 Wn.2d

8  774, 785, 30 P.3d 1261 (2001); *Donohoe v. State*, 135 Wn. App. 824, 834, 142 P.3d 654 (2006);

9  *See Fuller v. Lee*, 2014 WL 6982519 at *13 (W.D. Wash. 2014); *Escalante v. City of Tacoma*, No.

10  C14-5774RBL, 2016 WL 7375301, at *8 (W.D. Wash. Dec. 20, 2016) (city's duty to train its

11  police officers is owed to public at large); *Shope v. City of Lynnwood*, 2011 U.S. Dist. LEXIS

12  32069, 19-20 (W.D. Wa. 2011) ("[t]he duty of the City to hire, train, retain, and supervise its

13  officers is owed to the public at large, not to plaintiff individually.")*; Dowell*, No. CO6-1240-JCC,

14  2007 WL 4365793, *7-8 (foreclosing negligent hiring, training, supervision, and retention claims).

15         Even if the public duty doctrine did not apply, negligent training, retention, and supervision

16  claims require a plaintiff to show that an employee acted outside the scope of his or her

17  employment.  *Niece*, 131 Wn.2d at 48-51; *Briggs v. Nova Servs.*, 135 Wn. App. 955, 966-67, 147

18  P.3d 616 (2006).  When an employer does not disclaim liability for the acts of its employees, these

19  negligence claims collapse into the direct tort claims against the employer.  *Gilliam v. Dep't of*

20  *Social & Health Servs.*, 89 Wn. App. 569, 584-85, 950 P.2d 20 (1998); *LaPlant v. Snohomish*

21  *County*, 162 Wn. App. 476, 479-80, 271 P.3d 254 (2011).

22

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

Finally, an employer can only be held liable for negligent retention for failing to exercise ordinary care by hiring or retaining an employee known to be unfit. *Peoples v. Puget Sound's Best Chicken!, Inc.*, 185 Wn. App. 691, 701, 345 P.3d 811 (2015). Negligent retention occurs in the course of employment. *Peck v. Siau*, 65 Wn. App. 285, 288, 827 P.2d 1108 (1992). Liability for negligent supervision arises when the employer knows or has reason to know that the employee presented a risk of danger to others. *Peoples*, 185 Wn. App. at 701; *Niece v. Elmview Grp. Home*, 131 Wn.2d 39, 48-51, 929 P.2d 420 (1997). The employer has a duty to "prevent the tasks, premises, or instrumentalities entrusted to an employee from endangering others." *Id.* at 48.

Here, each of the officers were in marked police vehicles, working a shift, and investigating a potential crime. Clearly, they were acting within the scope of their employment. Regardless, just as there is no evidence of negligent infliction of emotional distress, there is no evidence that any of the arresting officers were unfit or presented a risk of danger to others, much less that the City *knew* of any such concern. The Court should dismiss all these meritless claims with prejudice.

## VI.   **CONCLUSION**

This Court should dismiss Mr. Beeman's false arrest, malicious prosecution, and negligent infliction of emotional distress claims because his arrest and prosecution were supported by probable cause. This Court should dismiss Mr. Beeman's conspiracy claim either because he cannot show any discriminatory animus, or because it is barred by the intra-enterprise conspiracy doctrine. This Court should dismiss Mr. Beeman's negligent supervision, training, and retention claims because each of the officers were acting within the scope of their employment. The Court should grant summary judgment and dispose of this matter with prejudice.

DEFENDANT CITY OF SEDRO-
WOOLLEY'S MOTION FOR SUMMARY
JUDGMENT (2:19-cv-00924-RSM) - 24

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

1    DATED this 19th day of November 2020.

2

3                      CHRISTIE LAW GROUP ,PLLC

4            By    /s/ Thomas P Miller

                         THOMAS P. MILLER, WSBA #34473

5                      Attorney for Defendant City of Sedro-Woolley

                      2100 Westlake Ave. N., Ste. 206

6                      Seattle, WA  98109

                      T:     (206) 957-9669

7                      F:     (206) 352-7875

                      Email:  tom@christielawgroup.com

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

DEFENDANT CITY OF SEDRO-
WOOLLEY'S MOTION FOR SUMMARY
JUDGMENT (2:19-cv-00924-RSM) - 25

CHRISTIE LAW GROUP, PLLC
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669