UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ARMEN BEEMAN, | CASE NO. C19-924 RSM |
| Plaintiff, | ORDER GRANTING DEFENDANT CITY OF SEDRO-WOOLEY'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| CITY OF SEDRO-WOOLLEY, | |
| Defendant. | |

### I.   INTRODUCTION

Plaintiff Armen Beeman was arrested and charged by officers of Defendant City of Sedro-Woolley's police department for obstructing a law enforcement investigation. Mr. Beeman contested the criminal prosecution and, following a jury trial, was found not guilty. Plaintiff now alleges that the arrest and prosecution violated his constitutional rights and that he suffered damages which are actionable under 42 U.S.C. § 1983 and Washington State tort law. Defendant maintains that the arrest and prosecution were lawful and seeks summary judgment dismissing all of Plaintiff's claims. Dkt. #22. Plaintiff opposes the motion. Dkts. #30 and #31.[1] Having

---

[1] Plaintiff filed two documents both captioned "Plaintiff's Response to Motion for Summary Judgment." Dkts. #30 and #31. The filings are largely duplicative, and Plaintiff does not indicate which he wishes the Court to consider. Additionally, the Court struggles to identify the substantive differences. The first contains no factual narrative and is accompanied by two

ORDER – 1

considered the record, the arguments of the parties, and the legal issues presented, the Court grants Defendant's motion and dismisses Plaintiff's action with prejudice.[2]

## II.     BACKGROUND[3]

In the early hours of April 11, 2016, Officer James Hannawalt, a member of Defendant's police department, initiated a traffic stop on a vehicle operating with only one functioning headlight. Dkt. #24-1 at 2; Dkt. #30-2 at 2. Plaintiff, a United States Customs and Border Patrol agent, was a passenger in the vehicle and the driver indicated that Plaintiff's service weapon was in the vehicle. Dkt. #24-1 at 2; Dkt. #30-2 at 2. Officer Hannawalt noticed that Plaintiff appeared intoxicated and he smelled an "extremely strong odor of alcohol" from inside the vehicle. Dkt. #24-1 at 2. The driver admitted that she had recently finished a beer and Officer Hannawalt therefore asked the driver to exit and speak with him at the rear of the vehicle as he investigated the driver's possible violation of Washington's driving under the influence ("DUI") laws. *Id.*

Plaintiff "knew that [the driver] was not under the influence of alcohol to a point that would impair her driving." Dkt. #30-2 at 2. While Officer Hannawalt continued to question the driver, Plaintiff exited the vehicle and began telling Officer Hannawalt that the driver was not intoxicated. Dkt. #24-1 at 2; Dkt. #30-2 at 2–3. Plaintiff concedes that he "was speaking in a

---

declarations. Dkt. #30. The second omits the factual narrative, sets forth the legal framework within which the Court is to consider Defendant's motion for summary judgment, appears to omit what would be page 8, and omits the declarations. Dkt. #31. Combined, the filings exceed the Court's page limits for opposing a motion for summary judgment. *See* LOCAL CIVIL RULES W.D. WASH. LCR 7(e)(3) (limiting response to summary judgment motion to 24 pages). Nevertheless, the Court has considered both of Plaintiff's filings.

[2] Both parties have requested oral argument, but the Court finds oral argument unnecessary to its resolution of this matter. *See* LOCAL CIVIL RULES W.D. Wash. LCR 7(b)(4) ("Unless otherwise ordered by the court, all motions will be decided by the court without oral argument.").

[3] In considering a motion for summary judgment, the Court views the evidence and draws inferences in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004).

ORDER – 2

1   loud voice" and used some profane language but testifies that he was not directing it at Officer
2   Hannawalt.  Dkt. #30-2 at 3.  However, Officer Hannawalt perceived Plaintiff as yelling and
3   pointing at him.  Dkt. #24-1 at 2.  Plaintiff indicates that he did not threaten Officer Hannawalt
4   or approach his location.[4]  Dkt. #30-2 at 3.  Officer Hannawalt requested that Plaintiff get back
5   inside of the vehicle and after the driver joined in Officer Hannawalt's request, Plaintiff reentered
6   the vehicle.  Dkt. #24-1 at 2; Dkt. #30-2 at 3.

7       Shortly thereafter, Plaintiff "suddenly lunged out of the car" and began yelling once again
8   in a "louder" and "more agitated" manner but remained standing by the vehicle.  Dkt. #24-1 at
9   2; Dkt. #30-2 at 3.  Officer Hannawalt had observed, over the course of the traffic stop, that
10  Plaintiff's "mood had quickly escalated" and he had become "extremely agitated."  Dkt. #24-1
11  at 3.  Remaining "very aware that [Plaintiff] had a service weapon in the glove box," Officer
12  Hannawalt requested that Officer Zachary Carroll, a member of Defendant's police department
13  who had recently arrived on the scene, "handcuff [Plaintiff] and place him in the back of [Officer
14  Hannawalt's] patrol car."  *Id.*  Officer Hannawalt informed Plaintiff that he was being detained
15  and Officer Carroll handcuffed Plaintiff and placed him in a patrol car.  *Id.*[5]

---

[4] Plaintiff submits a declaration indicating that he did not "attempt to interfere," presumably with Officer Hannawalt's investigation.  Dkt. #30-2 at 3.  However, this directly conflicts Plaintiff's prior deposition testimony that he wanted to cause Officer Hannawalt to stop his investigation. *See* Dkt. #27-1 at 54–55; *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009) ("The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony.") (citation omitted).

[5] Plaintiff offers two depositions, his own and that of the driver, detailing the events of April 11, 2016 in support of his opposition to Defendant's motion.  At this point in the narrative, each declaration becomes inconsistent with the clear course of events.  Plaintiff indicates that, as he sat in his vehicle, he "observed [Officer Hannawalt] himself blow into the [portable breath test] device" and subsequently wipe "the mouthpiece with some sort of material," which appeared to be a sanitary wipe moist with alcohol, and that Plaintiff subsequently exited his vehicle. Dkt. #30-2 at 3.  Conversely, the driver testifies that Plaintiff had been placed into the patrol vehicle before the portable breath test was used and that thereafter "[Plaintiff] stood up outside the vehicle."  Dkt. #30-3 at 3.  This testimony clearly conflicts with the testimony of Officers

ORDER – 3

Officer Hannawalt proceeded to have the driver perform field sobriety tests and Plaintiff continued to be disruptive. Plaintiff testified that his intent, "from beginning to end," was to have Officer Hannawalt cease his investigation of the possible DUI. Dkt. #27-1 at 54–55. To that end, and while the driver was performing a walk and turn test, Plaintiff began yelling from inside of the vehicle. Dkt. #24-1 at 3. While the driver was performing the next test, a one leg stand test, the driver became distracted by Plaintiff's yelling and "did not complete the test because she tried to stop [Plaintiff] from yelling." *Id.* Plaintiff complied with the driver's request and Officer Hannawalt completed his DUI investigation. *Id.* After completing his investigation, Officer Hannawalt informed Plaintiff that he was being charged with obstructing Officer Hannawalt's investigation. *Id.* at 4. Officer Hannawalt issued Plaintiff a criminal citation and was subsequently released. *Id.*

Plaintiff's criminal charge proceeded in the Sedro-Woolley Municipal Court. Dkt. #32-1 at 5. On April 14, 2016, "Judge Brock Stiles determined that there was probable cause for the charge." Dkt. #32-1 at ¶ 3; *Id.* at 5, 10. Additionally, the prosecuting attorney determined that there was probable cause that Plaintiff had committed the offense of obstruction. *Id.* at ¶ 4. Plaintiff maintained that he was innocent and had not obstructed the officers' investigation, contested the criminal citation, and was ultimately found not guilty after proceeding to trial. Dkt. #30-1 at 33. However, at least in part because of this incident, Plaintiff was subsequently

---

Hannawalt and Carroll and the video captured by Officer Carroll's bodycam. Dkts. #23-1, #23-2, and #24-1. These sources, and principally the bodycam footage, make clear that Officer Hannawalt performed field sobriety tests, including the use of a portable breath test, after Plaintiff was already detained in a patrol vehicle and that Plaintiff did not exit the patrol vehicle during the administration of the field sobriety tests or the portable breath test. Dkt. #23-2. The differences in the sequences of events is legally immaterial but calls into question the veracity or accuracy of both Plaintiff's and the driver's testimony regarding the events. *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

ORDER – 4

1  terminated from his employment with the United States Customs and Border Control. Dkt. #27-
2  1 at 8–14.
3        Plaintiff filed this action in a Washington State court on June 11, 2019. Dkt. #1-1. He
4  alleged that Defendant was liable under 42 U.S.C. § 1983 for violation of his constitutional due
5  process rights because it had "a policy of knowingly permitting an illegal arrest and criminal
6  prosecution to occur." *Id.* at ¶ 4.4. Plaintiff also alleged that Defendant conspired with its
7  employees to deprive him of his equal privileges and immunities under the laws in violation of
8  42 U.S.C. § 1985(3). *Id.* at ¶¶ 5.1–5.4. Lastly, Plaintiff alleged Washington State tort law claims
9  on the basis that Defendant was negligent in its training, supervision, and retention of its
10 employees and that Defendant negligently inflicted emotional distress upon Plaintiff. *Id.* at
11 ¶¶ 6.1–7.4. Defendant removed the action to this Court on the basis of Plaintiff's federal claims
12 and now seeks summary judgment in its favor on all claims.

13                 **III.        DISCUSSION**

14   **A. Legal Standard**

15       Summary judgment is appropriate where "the movant shows that there is no genuine
16 dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.
17 R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are
18 those which might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at
19 248. In ruling on summary judgment, a court does not weigh evidence to determine the truth of
20 the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco,*
21 *Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*,
22 969 F.2d 744, 747 (9th Cir. 1992)).
23       The non-moving party must present significant and probative evidence to support its
24 claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir.

ORDER – 5

1991). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 251. Neither will uncorroborated allegations and self-serving testimony create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002); *T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n*, 809 F. 2d 626, 630 (9th Cir. 1987). Rather, the non-moving party must make a "sufficient showing on [each] essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

On summary judgment, the Court views the evidence and draws inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004). However, where the non-moving party fails to properly support an assertion of fact or fails to properly address the moving party's assertions of fact, the Court will accept the fact as undisputed. Fed. R. Civ. P. 56(e). As such, the Court relies "on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1278–79 (9th Cir. 1996) (quotation marks and citations omitted). The Court need not "comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001); *Keenan*, 91 F.3d at 1279 (the court will not "scour the record in search of a genuine issue of triable fact").

### B. Plaintiff's § 1983 Claims

Plaintiff's Compliant alleged a cause of action under 42 U.S.C. § 1983 based on a deprivation of his constitutional rights to due process under the Fourth and Fourteenth

ORDER – 6

Amendments[6] to the United States Constitution. More specifically, Plaintiff alleged that Defendant "engaged in a policy of knowingly permitting an illegal arrest and criminal prosecution to occur." Dkt. #1-1 at ¶ 4.4. The parties have split the consideration of this claim broadly between the alleged false arrest of Plaintiff and his subsequent prosecution. The Court addresses the claim similarly.

**1. Plaintiff's § 1983 Claim for False Arrest**

Plaintiff largely concedes that his § 1983 claim related to false arrest is time barred. As Defendant sets forth, the statute of limitations applicable to claims under 42 U.S.C. § 1983 is "the statute of limitations of the state in which the claim arises." Dkt. #22 at 9 (citing *Donoghue v. Orange Cnty.*, 848 F.2d 926, 929 (9th Cir. 1987)). Plaintiff does not contest that the applicable statute of limitations under Washington State law is three years.

Here, the events giving rise to Plaintiff's false arrest claims unquestionably occurred on April 11, 2016, and Plaintiff did not file suit until June 11, 2019. Dkt. #1-1. Plainly, Plaintiff's filing of this action did not fall within the applicable three-year statute of limitations and Plaintiff does not argue differently.[7] Dkt. #30 at 2–3 (Plaintiff conceding his claims are barred by the applicable statute of limitations and arguing only that the Court should find his action timely by applying the doctrine of equitable tolling). Further, Washington State's statute effectively extending the statute of limitations applicable to state law claims against public entities by 60

---

[6] Plaintiff does not specifically mention the Fourth Amendment. However, Defendant notes that Plaintiff's "Fourteenth Amendment claim based on his alleged false arrest is actually governed by the Fourth Amendment." Dkt. #22 at 9 n.7 (citing *Borunda v. Richmond*, 885 F.2d 1384, 1391 (9th Cir. 1988); *Albright v. Oliver*, 510 U.S. 266, 273 (1994)). Plaintiff does not contest Defendant's argument that his claims are appropriately considered under the Fourth Amendment.

[7] Plaintiff also does not argue the logical position that the statute of limitations applicable to his malicious prosecution claims began to run at a different time than the statute of limitations applicable to his false arrest claims.

ORDER – 7

days does not alter this result. *See* WASH. REV. CODE § 4.96.020. Clear authority holds that the extension is inapplicable to § 1983 claims. *Boston v. Kitsap Cnty.*, 852 F.3d 1182, 1185, 1189 (9th Cir. 2017) (holding that Revised Code of Washington § 4.96.020 does not alter the three-year statute of limitations applicable to § 1983 claims).

Plaintiff is left to argue that the Court should apply the doctrine of equitable tolling to find his claim timely. Dkt. #30 at 3 (setting forth the requirements for equitable tolling) (citing *Douchette v. Bethel Sch. Dist. No. 403*, 117 Wash.2d 805, 818 P.2d 1362 (1991)). However, the Court is persuaded by Defendant's argument that equitable tolling should not apply here in the face of clear legal authority giving Plaintiff and his counsel fair notice of the applicable statute of limitations.[8] This clear authority precludes any argument that Plaintiff proceeded diligently and his § 1983 claim premised on his allegedly false arrest is appropriately dismissed.

**2. Plaintiff's § 1983 Claims for Malicious Prosecution**

Plaintiff appears to abandon his malicious prosecution claim under § 1983, and instead attempts to assert an unalleged Washington State common law action for malicious prosecution. Dkt. #30 at 3–4. Such an action requires a plaintiff to show:

> (1) that the prosecution claimed to have been malicious was instituted or continued by the defendant; (2) that there was want of probable cause for the institution or continuation of the prosecution; (3) that the proceedings were instituted or continued through malice; (4) that the proceedings terminated on the merits in favor of the plaintiff or were abandoned; and (5) at the plaintiff suffered injury or damage as a result the prosecution.

*Id.* (citing *Hanson v. Snohomish*, 121 Wash.2d 552, 558, 852 P.3d 295 (1993)). Plaintiff's attempt fails for a variety of reasons.

---

[8] Nor is the Court persuaded that Plaintiff "diligently pursued his rights." Dkt. #30 at 3. Plaintiff waited until the last possible day of the limitations period to file a claim with Defendant and the last possible day, of the 60-day extension applicable to his state law claims, to file suit.

ORDER – 8

1    First, the Court finds that Defendant did not allege a stand-alone malicious prosecution
2    claim in his Complaint.[9]  Rather, Plaintiff alleged as a part of his § 1983 claim that Defendant's
3    policies resulted in a criminal prosecution that violated his constitutional rights to due process.
4    The omission of a stand-alone claim is clear, especially in light of Plaintiff's decision to concede
5    a malicious prosecution claim under § 1983 and his unpersuasive attempt to cobble together a
6    malicious prosecution claim by pointing to paragraphs 3.18, 3.20, 3.23, 4.4, 4.5, 4.6, 4.7, 4.8, and
7    8.18[10] of his Complaint.  Dkt. #30 at 4.  These allegations relate primarily to Plaintiff's arrest and
8    only tangentially touch on Plaintiff's subsequent prosecution and are insufficient to advance a
9    stand-alone malicious prosecution claim under Washington State law.  Because Plaintiff has
10   abandoned his malicious prosecution claim under § 1983, dismissal is appropriate.

11   Second, Defendant establishes that Plaintiff's malicious prosecution claim is barred by
12   the Washington State trial court's determination of probable cause in Plaintiff's criminal case.
13   Dkt. #22 at 11 (citing *Michigan v. Summers*, 452 U.S. 692, 700 (1981); *Cabrera v. City of
14   Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998); *Hanson*, 121 Wash.2d at 556, 852 P.2d at
15   297); Dkt. #33 at 5–6 (citing *Hubbert v. City of Moore*, 923 F.2d 769, 772 (10th Cir. 1991)).  In
16   *Hubbert*, the Tenth Circuit applied Oklahoma State law and held that where a criminal defendant
17   is afforded a "full and fair opportunity to litigate the question of probable cause at the preliminary
18   hearing [the criminal defendant is later] . . . estopped from relitigating the issue in" a subsequent
19   civil action for false arrest.  *Hubbert*, 923 F.2d at 773.

---

[9] Nor does Plaintiff request leave to amend the Complaint at this late juncture.

[10] The Court notes that the Complaint does not contain a paragraph numbered 8.18.  *See* Dkt. #1-1.  Even if Plaintiff intended to cite to paragraph 8.1, that paragraph merely demands a trial by jury.  *Id.* at ¶ 8.1.

ORDER – 9

Plaintiff concedes that "probable cause is a complete defense to an action for malicious prosecution" and does not point to any countervailing authority. Dkt. #30 at 4. Here, the judge presiding over Plaintiff's criminal case found probable cause and the prosecutor similarly satisfied himself that probable cause supported Plaintiff's criminal charges. Dkt. #32-1 at 5–10. Plaintiff's criminal case thereafter proceeded through a jury trial without Plaintiff challenging his arrest on the basis of probable cause. The Court agrees that the same standard should apply here and bars Plaintiff's claims for malicious prosecution such that dismissal is appropriate.[11]

Third, Plaintiff's § 1983 malicious prosecution claim fails because Plaintiff pursues the claim only against Defendant City of Sedro-Woolley and not against the Officers involved. As a result, Plaintiff must establish that an unconstitutional custom or policy or deliberate indifference lead to the violation of his rights. Dkt. #22 at 19 (citing *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1096 (9th Cir. 2013)). Even if genuine disputes as to material facts precluded summary judgment on Plaintiff's claim that his constitutional rights were violated, Plaintiff points to no evidence that Defendant had an unconstitutional custom or policy or was deliberately indifferent in its training of its officers and that the policy resulted in a violation of his constitutional rights.

//

//

---

[11] Plaintiff argues principally that his arrest lacked probable cause because, under *State v. E.J.J.*, 183 Wash.2d 497, 354 P.3d 815 (2015), a criminal obstruction charge cannot be premised on speech alone. Dkt. #30 at 5–9. Plaintiff's argument is premised on the argument that both Officers Hannawalt and Carroll testified that they knew at the time they arrested Plaintiff that his conduct did not constitute obstruction. *Id.* But Defendant refutes this argument, indicating that Plaintiff's characterization is contrary to the Officers' testimony. Dkt. #33 at 2–4 (detailing criminal trial testimony of Plaintiff's conduct and intent to stop Officer Hannawalt's investigation).

ORDER – 10

Rather, Plaintiff points to this singular event in which he maintains that officers acted improperly[12] and argues that Defendant's Chief of Police ratified the unconstitutional actions of Officers Hannawalt and Carroll. Dkt. #30 at 12; Dkt. #22 at 20 (ratification requires that "an official with final policy-making authority ratify a subordinate's unconstitutional action or decision and the basis for it") (citing *Hopper v. City of Pasco*, 241 F.3d 1067, 1083 (9th Cir. 2001)). But Plaintiff's theory of ratification fails as it is premised on Defendant's Chief of Police's letter to Plaintiff's employer which, even in the light most favorable to Plaintiff, does not ratify the actions of Defendant's Officers. See Dkt. #30-1 at 27. In fact, the letter does not address the propriety of Defendant's Officers' actions[13] and rather focuses on Plaintiff's unacceptable actions in the course of his contact with Officers Hannawalt and Carroll. *Id.* The letter concludes that, as a result, Plaintiff would no longer be permitted to visit Defendant's police department without being accompanied by a supervisor. Dkt. #30-1 at 27.[14] Plaintiff's ratification theory fails.

---

[12] "To impose municipal liability under § 1983 based solely on a single incident, a plaintiff must demonstrate that the incident 'was caused by an existing unconstitutional municipal policy which policy can be attributed to a municipal policymaker.'" Dkt. #22 at 19 (quoting *Oklahoma City v. Tuttle*, 471 U.S. 808, 824 (1985)).

[13] "A policymaker's knowledge of an unconstitutional act does not, by itself, constitute ratification. Instead, a plaintiff must prove that the policymaker approved of the subordinate's act." *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999).

[14] Chief Tucker's letter indicates that Plaintiff was arrested because he was "intoxicated, belligerent and interfering with" officers investigating the driver for DUI. Dkt. #30-1 at 27. The letter "congratulate[d] [Plaintiff] on hiring an excellent lawyer that got him off of the misdemeanor charge of Obstructing an Officer" and noted that Plaintiff behaved appropriately during the criminal trial. *Id.* Nevertheless, Chief Tucker indicated that Defendant's police department had a "lack of faith in [Plaintiff's] judgment" and that he was no longer welcome at Defendant's police department unless accompanied by a supervisor and acting in his official capacity. *Id.* Chief Tucker closed the letter by indicating that an apology from Plaintiff to the officers involved "might have gone a long way toward a much better resolution than to have taken a case to [c]ourt, costing money to [Plaintiff] and inconvenience and cost to [Defendant]." *Id.*

ORDER – 11

1    Fourth, and even if probable cause was absent, Plaintiff does not point to any evidence
2    that Defendant pursued the subsequent prosecution in malice.  Plaintiff testifies that an officer
3    told him that "people like you should not be allowed to work in law enforcement" and that Officer
4    Hannawalt added that "[h]opefully [the obstruction charge] fixes that." Dkt. #30-2 at 4.  Putting
5    aside whether these statements indicate that the actions were taken for the purpose of malice,
6    Plaintiff does not point to any authority indicating that the officers' alleged malice may be
7    imputed to the prosecutor who decided to pursue the charges or to Defendant more generally.

8    Fifth, and having found no evidence of malice, the Court does not hold that Defendant's
9    actions were so "arbitrary" as to "shock the conscience" and violate Plaintiff's Fourteenth
10   Amendment rights.  *See* Dkt. #22 at 18 (setting forth standards applicable to claims under the
11   Fourteenth Amendment).  For all these reasons, Plaintiff's § 1983 action, to the extent premised
12   on his allegations of malicious prosecution, fails and should be dismissed.

13   **C. Negligent Supervision, Training, and Retention Claims[15]**

14   Plaintiff's claim for negligent supervision, training, and retention likewise fails.
15   Negligent hiring, training, retention, and supervision claims "are based on the theory that 'such
16   negligence on the part of the employer is a wrong to [the injured party], entirely independent of
17   the liability of the employer under the doctrine of respondeat superior.'" *Niece v. Elmview Grp.*
18   *Home*, 131 Wash.2d 39, 48, 929 P.2d 420, 426 (1997) (quoting *Scott v. Blanchet High Sch.*, 50
19   Wash. App. 37, 43, 747 P.2d 1124 (1987)) (alteration in original).  Rather, negligent supervision
20   imposes a duty for the employer to control an employee acting outside the scope of the

---

[15] The Court notes that, having resolved Plaintiff's federal claims, it need not resolve Plaintiff's state law claims.  However, the Court finds that the interest of judicial efficiency supports resolving this case in its entirety.  Further, Plaintiff has not requested that, in the event the Court dismisses his federal claims, the Court remand his action to state court for consideration of his state law claims.

ORDER – 12

employee's employment. *Id.* at 51, 929 P.2d at 427.  However, the employer must know or have constructive knowledge "that the employee presented a risk of danger to others." *Id.* at 48–49, 929 P.2d at 426.

Here, Plaintiff entirely fails to support his claims.  Plaintiff bases his claim both on his arrest and the ultimate termination of his employment and argues that Defendant should have prevented both.  But, having already determined that the prior probable cause findings should apply in this case, Plaintiff points to nothing indicating that a negligent hiring, supervision, training, or retention claim can be brought were no false arrest or malicious prosecution occurred.  As to Plaintiff's termination from his employment, he points to no evidence that Defendant's officers acted outside the scope of their employment to influence Plaintiff's termination.  Even if there was such evidence, Plaintiff points to a single instance and does not present any evidence which establishing that Defendant knew or should have known that the officers would act outside of their employment responsibilities to effectuate termination of an individual's employment.

**D. Plaintiff's § 1985 Claim and Claim for Negligent Infliction of Emotional Distress**

Plaintiff does not oppose dismissal of his claim under 42 U.S.C. § 1985 or dismissal of his state law claim for negligent infliction of emotional distress. Dkt. #30 at 11, 12. .  The Court accordingly finds dismissal of those claims appropriate.

**E. Defendant's Motion to Strike**

Defendant's reply in support of its motion for summary judgment requests that the Court strike several portions of Plaintiff's declaration on the grounds of hearsay, as a sham affidavit contradicting earlier deposition testimony, and as unqualified expert opinion testimony. Dkt. #33 at 1–2.  While Defendant's bases for objection appear appropriate, the Court finds the testimony immaterial to its resolution of this matter and denies Defendant's request as moot.

//

## IV. CONCLUSION

Accordingly, and having considered the motion, the briefing of the parties, the evidence presented in support, and the remainder of the record, the Court finds and ORDERS that Defendant City of Sedro-Woolley's Motion for Summary Judgment (Dkt. #22) is GRANTED. Plaintiff's claims are dismissed with prejudice. This matter is CLOSED.

DATED this 2nd day of August, 2021.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER – 14